UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| WILLIAM L. KING | CIVIL ACTION NO. 15-2363 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| ELLIS POTTERY, INC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 14) filed by Defendant Ellis Pottery, Inc. ("Ellis Pottery"). Ellis Pottery moves for summary judgment on all employment discrimination claims presented by *pro se* Plaintiff William L. King ("King"). King has opposed the motion. See Record Document 16. For the reasons set forth below, the Motion for Summary Judgment filed by Ellis Pottery is hereby **GRANTED** and all of King's claims are **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

King's *pro se* complaint (Record Document 1) is vague, but it appears he alleges a racial discrimination claim under Title VII against his former employer, Ellis Pottery, all in relation to his termination in July 2015. Ellis Pottery is a Louisiana retailer with its principal place of business in Bossier City, Louisiana. See Record Document 14-2 at ¶ 1. Ellis Pottery has more than 15 employees and is subject to the provisions of Title VII of the Civil Rights Act of 1964. See id. at ¶ 2. As part of its operations, Ellis Pottery maintains a warehouse in Bossier City, Louisiana. See id. at ¶ 3. The warehouse and the main business office of Ellis Pottery are at the same location. See id.

King is a black male who started working at the Ellis Pottery warehouse in Bossier City on February 22, 2012. See id. at ¶ 4; Record Document 1-3. The individuals primarily

responsible for his hiring were Derek Ellis ("Ellis"), currently the CEO of Ellis Pottery, and Wesley York ("York"), the warehouse manager. See id. at ¶ 4. The typical non-management staffing at the Ellis Pottery warehouse is two drivers and two warehouse employees. See id. at ¶ 5. There is one manager. See id.

It is a long-standing policy of Ellis Pottery that warehouse employees may not take take boxes out of the warehouse without first breaking them down. See id. at ¶ 6, citing Record Document 14-3 (Affidavit of Ellis) & Record Document 14-4 (Affidavit of Becky Crumpler ("Crumpler"), Human Resources Director at Ellis Pottery). According to the Ellis Pottery policy, an employee may not take empty boxes out to their personal vehicles without (1) notifying the manager of the warehouse and (2) breaking down the boxes so that they are flat and cannot contain anything. See id. Such policy is designed to prevent employees from removing property from the warehouse by concealing the property in boxes. See id.

In late June or early July 2015, King placed two boxes on a dolly and took them outside the warehouse. See id. at ¶ 8, citing Record Document 14-3 (Affidavit of Ellis); see also Record Documents 19 & 20. It is undisputed that the boxes were not broken down. See Record Document 14-2 at ¶ 8, citing Record Document 14-3 (Affidavit of Ellis); Record Document 16 at 1. King did not take the boxes to the trash dumpster, but instead proceeded towards his personal vehicle. See Record Document 14-2 at ¶ 9, citing Record Document 14-3 (Affidavit of Ellis). At the same time, Katie Ellis, an Ellis Pottery management employee, was leaving the office. See id. at ¶ 10, citing Record Document 14-3 (Affidavit of Ellis) & Record Document 14-5 (Affidavit of Katie Ellis). Katie Ellis attested in her affidavit:

> My car was parked near the area where William King was. When I got into my car, I saw Mr. King moving toward his truck with a dolly and the two boxes. . . . Mr. King appeared to notice that I was watching him. He stopped doing what he was doing when he saw me. He stayed behind his truck, facing the wall, for about twenty seconds. He then started heading back in the direction of the trash dumpster with the boxes as if he was taking them to the dumpster. . . . I exited the parking lot.

Record Document 14-5 at ¶ 2. Katie Ellis subsequently reported what she observed to Ellis and York. See Record Document 14-2 at ¶ 12, citing Record Document 14-5 (Affidavit of Katie Ellis). Ellis and York, along with Crumpler, viewed the security tape, which showed King's actions once Ms. Ellis left the parking lot. See id. Once Katie Ellis exited the parking lot, King reversed direction and went back towards his truck with the two boxes. After going back to his truck with the two boxes, King took the dolly and the boxes back to the trash dumpster and placed the boxes into the trash dumpster. See id. at ¶ 13, citing Record Document 14-3 (Affidavit of Ellis).

When confronted with the security video, King never offered any explanation as to why he took the boxes to his truck and why he reversed course when he saw Katie Ellis in the parking lot. See id. at ¶ 10, citing Record Document 14-3 (Affidavit of Ellis) & Record Document 14-4 (Affidavit of Crumpler). King's removal of the boxes without management consent violated Ellis Pottery's warehouse policy concerning removal of items from the warehouse, in particular, boxes. See id. at ¶ 16, citing Record Document 14-4 (Affidavit of Crumpler) & Record Document 14-6 (Affidavit of York). King was aware of the policy; in fact, he had previously asked York for permission to take broken down boxes home on a number of occasions. See id., citing Record Document 14-6 (Affidavit of York). Following the review of King's actions and after King failed to offer any explanation for his actions, a decision was made to terminate his employment. See id. at ¶ 17, citing Record Document

14-3 (Affidavit of Ellis) & Record Document 14-4 (Affidavit of Crumpler). His employment was terminated on July 9, 2015. See id.

After receiving his "right-to-sue" letter, King filed the instant lawsuit on September 14, 2015. See Record Document 1. King alleges racial discrimination under Title VII. See id. Ellis Pottery has now moved for summary judgment seeking dismissal of all of King's claims. See Record Document 14.

## LAW AND ANALYSIS

**I.    Summary Judgment Standard**.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be

granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

While the Court must resolve all reasonable factual inferences in favor of the nonmoving party, it has no duty to search the record for material fact issues. See Pylant v. Hartford Life and Accident Ins. Co., 497 F.3d 536, 538 (5th Cir. 2007); Galindo v. Precision American Corp., 754 F.2d 1212, 1216 (5th Cir. 1985). The nonmovant must identify specific evidence in the record and articulate precisely how this evidence supports his claim. See RSR Corp. v. Int'l Ins. Co., 612 F.3d 851, 857 (5th Cir. 2010). Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment. See Nat'l Ass'n of Gov't Emp.'s v. City Pub. Serv. Bd. of San Antonio, Tex., 40 F.3d 698, 713 (5th Cir. 1994). "A liberal reading of plaintiff's pleadings is the only special treatment afforded pro se plaintiffs by the courts." Kiper v. Ascension Parish Sch. Bd., 2015 WL 2451998, *1 (M.D.La. May 21, 2015), citing Callahan v. C.I.R., Civ. A. 99-0295-C-M1, 2000 WL 1141607, at *1 (M.D.La. Apr. 10, 2000). A "court is not required to search for or try to create causes of actions or find material issues of fact for pro se plaintiffs." Id.

**II. Title VII Analysis.**

In order to establish a Title VII race discrimination claim, King must first establish a *prima facie* case of discrimination, which requires a showing that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). If King is able to make this *prima facie* showing, the burden then shifts to Ellis Pottery "to articulate a legitimate, nondiscriminatory . . . reason for its employment

action." Id. at 557. Ellis Pottery's "burden is only one of production, not persuasion, and involves no credibility assessment." Id. If met, then King "bears the ultimate burden of proving that the . . . proffered reason is not true but instead is a pretext for the real discriminatory." Id. "To carry this burden, [King] must rebut each nondiscriminatory . . . reason articulated by [Ellis Pottery]." Id.

As to his *prima facie* case, King has met requirements one through three and the case turns on requirement four, that is, was he replaced by someone outside his protected group or was he treated less favorably than other similarly situated employees outside the protected group. In his verified complaint, King asserts that "other employees were permitted to put empty boxes in their vehicles." Record Document 1 at 1.[1] In *unverified* pleadings, King contends he was the "only black employee [in the warehouse] part-time"; he was the only black employee in the warehouse; when Ellis terminated him he said that his position would not be replaced; a white employee named "Peyton was caught on [the] security camera talking on his cell phone over 15 minutes." Record Document 1-2 at 3; Record Document 16 at 4. In yet another unverified pleading, King alleged:

> Wesley York my supervise [sic] said his complaint some what me a scavenger. That is a race commit [sic] about me cause he put me down as a slave an animal. That was not right all for him to say that race words about me at all.

Record Document 16 at 7.

---

[1] King's complaint, which is a two page document filed on September 14, 2015, contains the following provision, "Under penalty of perjury, I declare that the information given in this complaint is true and correct." Record Document 1 at 2. Governing Fifth Circuit law permits the Court to consider factual averments in a *pro se* litigant's verified pleadings (or pleadings submitted under penalty of perjury or of making a false statement) as controverting evidence. See Hart v. Hairston, 343 F.3d 762, 765 (5th Cir.2003); King v. Dogan, 31 F.3d 344, 346 (5th Cir.1994).

Based on the allegations set forth above, King has not established his *prima facie* case of racial discrimination. He has presented no competent summary judgment evidence demonstrating that he was replaced by someone outside his protected group or that he was treated less favorably than other similarly situated employees outside the protected group. See McCoy, 492 F.3d at 556. King stated in his opposition that when Ellis terminated him he said that his position would not be replaced; yet, this is an unverified allegation. Conversely, Ellis Pottery has presented competent summary judgment evidence that all of the individuals who replaced King were black. See Record Documents 14-4 (Affidavit of Crumpler) & 14-7. Likewise, King has presented no competent summary judgment evidence showing that he was treated less favorably than other similarly situated employees outside the protected group.[2] In his verified complaint, King refers to other employees who were permitted to put empty boxes in their vehicles, but he goes into no further factual detail concerning if those employees sought permission from management. In an unverified pleading, he references a white employee who was caught on the security camera talking on his cell phone over 15 minutes, but presumably was not terminated. Yet, none of this evidence, even if the Court assumes it all to be competent summary judgment evidence, satisfies the narrow definition of "similarly situated." Ellis Pottery has again presented the affidavit of its human resource director, Crumpler, wherein she stated that

---

[2]Similarly situated employees are employees who are treated more favorably in nearly identical circumstances. See Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 259–260 (5th Cir. 2009). The Fifth Circuit defines "similarly situated" narrowly. Wheeler v. BL Dev. Corp., 415 F.3d 399, 406 (5th Cir.2005). For instance, employees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be "nearly identical." Hockman v. Westward Communications, LLC, 282 F.Supp.2d 512, 527-528 (E.D.Tex.2003).

she knew "of no other employee who has engaged in actions similar to those of Mr. King." Record Document ¶ 6. Thus, based on the foregoing, King has not met his burden of establishing a *prima facie* case of racial discrimination. Ellis Pottery's Motion for Summary Judgment is **GRANTED** and King's claims are **DISMISSED WITH PREJUDICE**.

## CONCLUSION

This Court finds that King has failed to meet his burden of establishing, with competent summary judgment evidence, a *prima facie* case of racial discrimination. Accordingly, Ellis Pottery's Motion for Summary Judgment (Record Document 14) is **GRANTED** and King's claims are **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 21st day of September, 2016.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE